UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ASLADI MERCHANT, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | Civil Action No. 3:25-CV-3373-X |
| | § | |
| KRISTI NOEM et al., | § | |
| | § | |
| *Respondents*. | § | |

# ORDER

Before the Court is Petitioner Asladi Merchant's (Merchant) Petition for Writ of Habeas Corpus (Habeas Petition) (Doc. 1) and Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction (TRO) (Doc. 2) against Respondents US Department of Homeland Security (DHS); Kristi Noem, in her capacity as Secretary of Department of Homeland Security; Todd Lyons, in his capacity as the Acting Director of US Immigration and Customs Enforcement (ICE); Josh Johnson, in his capacity as US Immigration and Customs Enforcement, Dallas Field Office Director; and Thomas Bergami, in his capacity as Warden of the Prairieland Detention Center (collectively "Respondents"). Merchant requests this Court to order his immediate release from ICE custody under his previous Order of Supervision. For the reasons outlined below, the Court finds ICE had authority to re-detain Merchant and **DENIES** Merchant's Habeas Petition (Doc. 1) and **DENIES AS MOOT** Merchant's TRO (Doc. 2).

## I. Factual Background

In 1986, Merchant, a native to the United Arab Emirates (UAE) and once citizen of Pakistan, arrived in the United States.[1] In 2003, Merchant was convicted of possession with intent to deliver a controlled substance. In February 2004, an immigration judge found Merchant removable for committing an aggravated felony and ordered Merchant to be removed to Pakistan—per Merchant's request. Later in 2004, after ICE was unable to obtain travel documents to facilitate Merchant's removal to Pakistan or the UAE, Merchant was released from custody and issued an Order of Supervision. Merchant alleges he has since attempted to obtain necessary travel documents from the UAE on his own but has been unsuccessful.

In August of 2025, ICE re-detained Merchant, and he has since been in custody at the Prairieland Detention Center. Respondents represent they are in the process of removing Merchant to Pakistan. Since Merchant has been in ICE custody, ICE internally approved Merchant's travel document request and delivered the travel document request to the Consulate General of Pakistan in Houston, Texas. Since 2025, Pakistan has been cooperative in both responding to travel document requests and effectuating alien removals—specifically ICE has successfully removed at least 270 Pakistani nationals to Pakistan between October 2024 to September 2025.

Merchant seeks release through a petition for writ of habeas corpus under the Constitution, 28 U.S.C. § 2241(c)(1), and the Immigration and Nationality Act (INA).[2]

---

[1] The parties disagree on whether Merchant is a citizen of Pakistan or is stateless. For this Habeas Petition, the Court will assume Merchant is stateless. *See* Doc. 1 at 2; Doc. 7 at 1.

[2] 8 U.S.C. § 1101 *et seq.*

2

## II. Legal Standards

### A. Habeas Corpus

To be entitled to a writ of habeas corpus, a petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States."[3] Habeas corpus proceedings are available to aliens "as a forum for statutory and constitutional challenges to post-removal-period detention."[4]

A writ of habeas corpus is reserved for fundamental defects resulting in a complete miscarriage of justice or wholly inconsistent with the demands of fair procedure.[5] This exceptional relief "is the precious safeguard of personal liberty and there is no higher duty than to maintain it unimpaired."[6]

### B. Re-detention and Removal of Aliens

The INA directs the government to secure an alien's removal within 90 days of a final order of removal.[7] A certain class of aliens "may be detained beyond that removal period."[8] However, due process prohibits the indefinite detention of an alien pending removal.[9] Continued detention is not authorized by statute "once removal is no longer reasonably foreseeable."[10] Once removal is no longer reasonably

---

[3] 28 U.S.C. § 2241(c)(3).

[4] *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

[5] *See Hill v. United States*, 368 U.S. 424, 428 (1962).

[6] *Bowen v. Johnston*, 306 U.S. 19, 26 (1939).

[7] 8 U.S.C. § 1231(a)(1)(A).

[8] 8 U.S.C. § 1231(a)(6).

[9] *Zadvydas*, 533 U.S. at 690, 699.

[10] *Id.* at 699.

foreseeable, the alien should be released and subject to supervision.[11]

Consistent with these principles, the Supreme Court has recognized a presumptively reasonable period of detention of six months when the government deems removal reasonably foreseeable.[12] Even if detention extends beyond that six-month period, the alien bears the burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."[13] Then even after the petitioner meets his burden, detention may be reasonable if the government can rebut the showing.[14]

In evaluating detention decisions, courts must "take appropriate account of the greater immigration-related expertise of the Executive Branch, . . . the serious administrative needs and concerns inherent in the necessarily extensive [ICE] efforts to enforce this complex statute, and the Nation's need to speak with one voice in immigration matters."[15]

Federal regulations also govern an alien's post-removal-period detention. The government may revoke an alien's release and re-detain him when enforcing a removal order.[16] In particular, the government may revoke release "and return the alien to custody if, on account of changed circumstances, [the government] determines that there is a significant likelihood that the alien may be removed in the reasonably

---

[11] 8 U.S.C. § 1231(a)(3); *Zadvydas*, 533 U.S. at 700.

[12] *Zadvydas,* 533 U.S. at 701.

[13] *Id.*

[14] *Id.*

[15] *Id.* at 700 (cleaned up).

[16] 8 C.F.R. § 241.4(l)(2)(iii).

foreseeable future."[17] The government's decision to re-detain an alien is governed certain factors:

> the history of the alien's efforts to comply with the order of removal, the history of [the government's] efforts to remove aliens to the country in question or to third countries, including the ongoing nature of [the government's] efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.[18]

Once an alien is re-detained, the regulations provide for certain procedures: the government should "conduct an initial informal interview promptly after [the alien's] return to [government] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."[19]

## C. Ripeness

The doctrine of ripeness stems from the fact that "federal courts do not decide abstract, hypothetical, or contingent questions."[20] As such, a "claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."[21]

## III. Analysis

Merchant asserts that Respondents violated the Due Process Clause of the Fifth Amendment, the INA, the INA's implementing regulations, and the APA when

---

[17] *Id.* § 241.13(i)(2).

[18] *Id.* § 241.13(f).

[19] *Id.* § 241.13(i)(3).

[20] *Halder v. Standard Oil Co.*, 642 F.2d 107, 110 (5th Cir. Unit B Apr. 1981).

[21] *Texas v. United States*, 523 U.S. 296, 300 (1998) (cleaned up).

5

ICE re-detained him and revoked his release.[22]

### A. *Zadvydas* governs Merchant's due process claims.

Merchant raises due process challenges to his post-removal-period detention. As a threshold matter, the Court concludes that *Zadvydas v. Davis* provides the governing framework for analyzing those claims.[23]

In *Zadvydas*, the Supreme Court addressed the constitutional limits of post-removal-period detention and construed the INA to avoid serious due process concerns.[24] The Supreme Court recognized that while the government has a legitimate interest in ensuring an alien's availability for removal, that interest does not justify indefinite civil detention.[25] Accordingly, detention is no longer authorized once removal is no longer reasonably foreseeable.[26] The Supreme Court held that six months is a presumptively reasonable period of detention; after that time, the alien may be entitled to release upon showing that there is no significant likelihood of removal in the reasonably foreseeable future.[27] The government may nevertheless continue detention by presenting evidence that removal remains significantly likely.[28]

Consistent with this framework, courts analyzing post-removal-period

---

[22] Doc. 1 at 23.

[23] *Zadvydas*, 533 U.S. 678.

[24] *Id.*

[25] *Id.* at 700.

[26] *Id.*

[27] *Id.* at 701.

[28] *Id.*

detention apply the standards articulated in *Zadvydas*, rather than general procedural due process balancing in *Mathews v. Eldridge*.[29] As fellow district Judge Wesley Hendrix aptly recognized, *Zadvydas* governs such claims for three independent reasons: "the Supreme Court's consistent decision to apply specialized tests to immigration due-process cases instead of *Mathews*, the nature of *Mathews'*s application in *Landon* compared to the facts of this case, and because *Zadvydas* displaces *Mathews* in Section 1231 cases."[30] Accordingly, the Court analyzes Merchant's due process challenge to his re-detention under *Zadvydas*.

### B. ICE had statutory and regulatory authority to re-detain Merchant.

Merchant asserts an ultra vires claim that his re-detention by ICE was unlawful because "no statute, constitutional provision, or other source of law authorize[d] Respondents to re-detain" him.[31] That contention is incorrect because ICE's actions were authorized by the INA and carried out pursuant to the INA's implementing regulations.

Under the INA, ICE possesses authority to detain an alien subject to a final order of removal for a period reasonably necessary to effectuate that removal.[32] That authority is bound by constitutional limits but remains intact where removal is reasonably foreseeable.[33]

---

[29] 424 U.S. 319 (1976).

[30] *Ladak v. Noem,* No. 1:25-CV-194-H, 2025 WL 3764016, at *7 (N.D. Tex. Dec. 30, 2025) (Hendrix, J.).

[31] Doc. 1 at 26.

[32] 8 U.S.C. § 1231(a)(6).

[33] *Zadvydas*, 533 U.S. at 689.

Applying that standard here, Merchant's removal remains reasonably foreseeable. Respondents approved Merchant's travel document request and transmitted it to the Pakistani Consulate, reflecting active efforts to effectuate his removal. In addition, Respondents presented undisputed evidence that Pakistan has recently cooperated in issuing travel documents and accepting removals, and that ICE has successfully removed hundreds of Pakistani nationals during the relevant period. Because removal remains reasonably foreseeable, the INA continues to authorize Merchant's detention.

The INA's implementing regulations further authorize ICE to revoke an alien's supervised release and return the alien to custody when "on account of changed circumstances," there is "a significant likelihood" of removal in the reasonably foreseeable future.[34] In determining whether re-detention is appropriate, ICE considers factors including the alien's compliance history, ICE's efforts to remove the alien to the country in question, the alien's cooperation with those efforts, the reasonably foreseeable results of removal efforts, and the views of the Department of State regarding prospects for removal.[35]

Those regulatory criteria are satisfied here. ICE's decision to re-detain Merchant was based on both individualized and systemic changes in circumstances. With respect to Merchant individually, Respondents approved and submitted his travel document request to the Pakistani Consulate, demonstrating renewed and

---

[34] 8 C.F.R. § 241.13(i)(2).

[35] *Id.* § 241.13(f).

active efforts to secure his removal. With respect to broader circumstances, Respondents presented evidence of Pakistan's recent cooperation with removal efforts and ICE's successful removals of hundreds of aliens to Pakistan. These facts correspond directly to the regulatory factors governing re-detention, including ICE's ongoing removal efforts, the reasonably foreseeable results of those efforts, and the Executive Branch's assessment of diplomatic conditions affecting repatriation.[36]

Taken together, these circumstances establish a significant likelihood that Merchant may be removed in the reasonably foreseeable future, thereby satisfying the regulatory standard for revoking supervised release and returning an alien to custody.[37] Because ICE's re-detention of Merchant was authorized by the INA and implemented in accordance with its governing regulations, ICE acted within its lawful authority. Merchant's ultra vires claim therefore fails.

**C. Merchant's re-detention comports with due process under *Zadvydas*.**

Under *Zadvydas*, detention is constitutionally permissible for a "period reasonably necessary to secure removal."[38] The Supreme Court has recognized a presumptively reasonable six-month period of detention where removal is reasonably foreseeable.[39]

Merchant seeks release from ICE custody within that presumptively reasonable six-month period. On that basis alone, his due process challenge fails.

---

[36] *Id.* § 241.13(f).

[37] *Id.* § 241.13(i)(2).

[38] *Zadvydas*, 533 U.S. at 680.

[39] *Id.* at 701.

9

Even if detention were to extend beyond six months, Merchant bears the burden of showing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."[40] For the reasons discussed above—namely, Pakistan's recent cooperation, ICE's active pursuit of travel documents, and the demonstrated feasibility of removals—Merchant has not carried that burden. Because his re-detention is within the presumptively reasonable six-month period and remains reasonably related to effectuating removal, it comports with due process.

**D. Any failure to follow regulatory revocation procedures was harmless.**

The regulations provide that upon re-detention, ICE should conduct an informal interview, provide notice of the reasons for revocation, and afford the alien an opportunity to respond.[41] Merchant asserts that ICE failed to comply with these procedures, and Respondents do not affirmatively assert compliance.

Harmless error applies in immigration cases generally.[42] The same is true for an agency's procedural violations.[43] Under a harmless-error analysis, the party asserting error bears the burden of demonstrating prejudice.[44]

Through this habeas proceeding, Merchant has had the opportunity to present his arguments to a federal court, submit evidence, and respond to the Respondent's position. Thus, Merchant has had ample opportunity to "respond to the reasons for

---

[40] *Id.*

[41] 8 C.F.R. § 241.13(i)(3).

[42] *Jalloh v. Garland*, No. 202117, 2023 WL 1859918, at *2 (5th Cir. 2023) (citing *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004)) (further citation omitted).

[43] *See City of Arlington v. FCC*, 668 F.3d 229, 243–44 (5th Cir. 2012).

[44] *Id.* at 243.

revocation"—the reason stated by the regulation for the informal interview.[45] Accordingly, any procedural deficiency did not prejudice Merchant and does not warrant habeas relief. Because habeas proceedings afford an alien more process than is required under Section 241.13(i)(3), even assuming ICE failed to comply with the regulation, any such error is harmless, and habeas relief is not appropriate.[46]

### E. Merchant's APA claim is not cognizable.

Merchant also seeks relief under the Administrative Procedure Act. Where a petitioner challenges the fact or duration of physical confinement and seeks immediate release, habeas corpus—not the APA—is the exclusive vehicle for relief.[47] Because Merchant seeks release from ICE custody, relief under the APA is unavailable.[48]

### F. Merchant's third-country removal claims are not ripe.

Merchant advances several policy arguments concerning third-country removals and expresses concern that Respondents may violate regulations governing such removals; however, his critique of the current administration's actions and policies does not establish a cognizable cause of action.

Merchant's third-country removal claims are speculative and dependent on future events that may never occur.[49] Merchant asserts he is "extremely concerned

---

[45] 8 C.F.R. § 241.13(i)(3).

[46] *Nguyen v. Noem*, 797 F. Supp. 3d 651, 662 (N.D. Tex. Aug. 10, 2025) (Hendrix, J.).

[47] *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

[48] *Id.* at 500.

[49] *Texas v. United States*, 523 U.S. 296, 300 (1998)

11

that he will be removed to a third country in which he has no connection with" and asks the Court to enjoin Respondents from effectuating a third-country removal without following proper procedures.[50] Respondents, however, state that they intend to remove Merchant to Pakistan and have requested travel documents from the Pakistani Consulate.[51]

For Merchant's claims to become ripe, Pakistan must first deny the Respondents' travel document request and then must decide to pursue third-country removal.[52] In *Ladak*, that court held that third-country removal claims were not ripe even after the Pakistani Consulate denied a travel document request and sought supplemental information.[53] Here, Merchant's travel document request remains pending, and there is no indication that Respondents plan to remove him to any country other than Pakistan.[54] Therefore, Merchant's claims are unripe so long as Respondents continue to seek his removal to Pakistan, and his request that the Court preemptively order compliance with regulations that have not been violated is unnecessary.[55]

---

[50] Doc. 1 at 2, 3.

[51] Doc. 7 at 13.

[52] *Ladak*, 2025 WL 3764016 at *12.

[53] *Id.*

[54] Doc. 7 at 13.

[55] For clarity, the Court's denial of this claim on ripeness is a denial without prejudice "to the filing of a subsequent habeas petition if he remains detained and the respondents begin to seek third-country removal." *Ladak*, 2025 WL 3764016 at *12.

## IV. Conclusion

For the foregoing reasons the Court **DENIES** Plaintiff-Petitioner Asladi Merchant's Emergency Petition for Writ of Habeas Corpus (Doc. 1) and **DENIES AS MOOT** Plaintiff-Petitioner Asladi Merchant's Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 2).

**IT IS SO ORDERED** this 28th day of January, 2026.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE